*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* B. G. STEVENS, Minor.

UNPUBLISHED
August 07, 2026
2:09 PM

No. 379251
Wayne Circuit Court
Family Division
LC No. 2024-000483-NA

Before: LETICA, P.J., and O'BRIEN and REDFORD, JJ.

PER CURIAM.

Respondent appeals as of right the trial court's trial court's order taking jurisdiction over the minor child, BGS, under MCL 712A.2(b)(1). We affirm.

## I. BACKGROUND

Before this case began, respondent had four children placed in the care and custody of the Department of Health and Human Services (DHHS). While that case was ongoing, caseworker Tamia Peterson discovered the respondent was pregnant. Respondent received prenatal care at Corewell Health Dearborn Hospital (Corewell Dearborn) and was scheduled to deliver BGS there. But on June 19, 2025, respondent arrived at Garden City Hospital in labor. Garden City Hospital was equipped to deliver babies in its emergency room, but it was not equipped to provide care for newborns or mothers recovering from childbirth—the hospital did not have a neonatal intensive care unit (NICU), nor did it have an obstetrics specialist on staff. Corewell Dearborn was the hospital closest to Garden City Hospital both with a NICU and that was equipped to provide obstetric and gynecological care. Peterson testified that she spoke with respondent about why she went to Garden City Hospital, and respondent told Peterson that it was because Children's Protective Services (CPS) had made contact with Corewell Dearborn, and respondent wanted to go to a hospital that CPS had not contacted so that respondent would be able to take the baby home. Garden City Hospital was, however, notified that there was an active CPS case involving respondent. And staff at Garden City Hospital informed respondent upon her arrival at the hospital that, after the baby was born, respondent and the baby would need to be transferred to a facility with obstetric and neonatal services.

-1-

BGS experienced complications after birth—for instance, there was concern about meconium aspiration, which required monitoring at a NICU. BGS was also having difficulty feeding and her glucose levels were initially low, causing BGS to be actively in distress. Respondent initially refused to place BGS under a warmer at her bedside, but she eventually agreed, after which BGS's temperature normalized, and her glucose levels increased. Still, staff at Garden City Hospital informed respondent that BGS needed to be transported to a facility that was better equipped to care for her, but respondent repeatedly refused. Respondent insisted that she and BGS be transported to the new hospital together, but no EMS carrier would agree to that. Eventually, after more than 24 hours, respondent agreed to allow BGS to be transferred to a suitable hospital, where BGS stayed until June 28, 2025.

Before BGS was released, the DHHS petitioned the court to take jurisdiction over BGS and remove her from respondent's care. Following a preliminary hearing, the trial court authorized the petition and ordered BGS removed from respondent's home. BGS was thus released from the hospital into the DHHS's care. Following a bench trial, the trial court found statutory grounds to exercise jurisdiction over BGS. This appeal followed.

## II. JURISDICTION

Respondent first argues that the trial court clearly erred when it found that jurisdiction was proper under MCL 712A.2(b).

## A. STANDARD OF REVIEW

MCL 712A.2 provides the circumstances in which a trial court can exercise jurisdiction over a juvenile. To exercise jurisdiction as provided in this statute, a trial court must find by a preponderance of the evidence that "the child comes within the statutory requirements." *In re Brock*, 442 Mich 101, 108-109; 499 NW2d 752 (1993). "We review the trial court's decision to exercise jurisdiction for clear error in light of the court's findings of fact." *In re BZ*, 264 Mich App 286, 295; 690 NW2d 505 (2004). See also *In re Kellogg*, 331 Mich App 249, 253; 952 NW2d 544 (2020). A finding is clearly erroneous if the reviewing court is left with a definite and firm conviction that a mistake was made. *Id*.

## B. ANALYSIS

The court assumed jurisdiction over the child under MCL 712A.2(b)(1) and (2), which provide in relevant part that a court has jurisdiction over a child

(1) Whose parent . . . , when able to do so, neglects or refuses to provide proper or necessary support, education, medical, surgical, or other care necessary for [the child's] health or morals [or] who is subject to a substantial risk of harm to his or her mental well-being . . . . As used in this sub-subdivision:

\* \* \*

(B) "Neglect" means that term as defined in section 2 of the child abuse and neglect prevention act, 1982 PA 250, MCL 722.602.

(2) Whose home or environment, by reason of neglect, cruelty, drunkenness, criminality, or depravity on the part of a parent, guardian, nonparent adult, or other custodian, is an unfit place for the juvenile to live in. As used in this sub-subdivision, "neglect" means that term as defined in section 2 of the child abuse and neglect prevention act, 1982 PA 250, MCL 722.602. [MCL 712A.2(b)(1), (2).]

MCL 722.602(1)(d) defines "neglect" as "harm to a child's health or welfare by a person responsible for the child's health or welfare," occurring "through negligent treatment, including the failure to provide adequate food, clothing, shelter, or medical care, though financially able to do so, or the failure to seek financial or other reasonable means to provide adequate food, clothing, shelter, or medical care." Our Supreme Court has defined "negligent" as used in MCL 722.602(1)(d) as "failing to exercise the care expected of a reasonably prudent person in like circumstances." *In re Lange*, ___ Mich ___, ___; ___ NW3d ___ (2025) (Docket No. 166509); slip op at 13.

Considering MCL 712A.2(b)(1), the trial court heard evidence that, despite staff at Garden City Hospital repeatedly informing respondent that the hospital was not equipped to provide neonatal or obstetrics care and that respondent and BGS would need to be transferred after BGS was born to ensure that BGS was properly cared for, respondent initially refused all attempts to transfer BGS to a suitable hospital. This was despite not only the risks that this refusal posed to BGS but the actual issues that BGS was experiencing with her health in the hours following her birth. Staff from Garden City Hospital that treated respondent and BGS testified about these problems at the adjudication trial and explained how they were ill-equipped to address BGS's issues. For instance, the staff detailed how Garden City Hospital simply did not have staff with the expertise to deal with typical issues that arise with newborns, such as issues that BGS was experiencing with feedings and latching. Garden City Hospital staff also testified that there was a concern about possible meconium aspiration, which required observation in a NICU, and Garden City Hospital did not have a NICU. The staff also testified about how providing proper care to BGS was complicated by respondent's reluctance to allow the staff to give BGS proper care, such as when respondent initially refused to place BGS in the warmer to normalize her temperature and increase her glucose levels. And, of course, the staff detailed how respondent's refusal to allow BGS to be transferred to a hospital that was equipped to provide neonatal care placed BGS in danger of experiencing serious complications that Garden City Hospital was not prepared to manage.[1]

Given this evidence, the trial court did not clearly err when it found by a preponderance of the evidence that jurisdiction was established under MCL 712A.2(b)(1). The evidence supported the court's finding that, despite being able to do so, respondent refused to provide proper medical care that was necessary for BGS's health. The evidence likewise supported the court's finding that BGS was harmed by respondent's negligent refusal to allow BGS to receive proper medical care— a reasonably prudent person in respondent's position would not have waited to address BGS's medical issues and would have immediately permitted BGS to be transferred to a hospital that could provide the care that BGS needed. Indeed, one of the nurses from Garden City Hospital testified that, in the nearly eight years that she had been a registered nurse, she had never had a mother refuse

---

[1] While it is true that respondent did eventually agree to allow BGS to be transferred, it was only following multiple attempts (and refusals).

to have their child transferred to a different hospital that could provide the services that the child needed and that Garden City Hospital was unable to provide. Respondent on appeal attempts to minimize the harm that her decisions caused BGS, noting that she ultimately consented to have BGS transferred, and the delay caused "no lasting harm" to BGS. But respondent does not dispute that the delay did cause harm to BGS's health (however minimal respondent believes that harm was), which is the pertinent standard. See MCL 722.602(1)(d). On this record, we conclude that the trial court did not clearly err by exercising jurisdiction over BGS under MCL 712A.2(b)(1).[2]

## III. DUE PROCESS

Respondent next argues that the trial court's exercise of jurisdiction over BGS violated her due-process rights in a variety of ways. None of respondent's due-process arguments are supported by the record, however.

Respondent contends that the trial court "relied heavily on [respondent's] prior cases involving other children" in support of its decision to exercise jurisdiction over BGS, but that is simply untrue. The trial court justified its exercise of jurisdiction over BGS by focusing exclusively on respondent's conduct directed towards BGS. The trial court did not even mention the case involving respondent's other children when it found that exercising jurisdiction over BGS was proper.

Respondent also argues that the trial court reached its judgment by making factual findings that relied entirely on speculation and conjecture instead of actual evidence. This is also untrue. The trial court's findings of fact were supported by the Garden City Hospital's staff's testimony about the actual harm that respondent's actions and decisions caused BGS and the medical records reflecting the same.

Respondent lastly contends that the trial court's finding of jurisdiction violated her right to due process because the court's finding was not supported by sufficient evidence. But this, too, is untrue, as demonstrated by this opinion's earlier discussion of the evidence supporting the trial court's decision.

Affirmed.


/s/ Anica Letica
/s/ Colleen A. O'Brien
/s/ James Robert Redford

---

[2] Because only one ground for jurisdiction must be found by a preponderance of the evidence, we need not consider, and will not address, the other ground found by the trial court. *In re SLH*, 277 Mich App 662, 669, 747 N.W.2d 547 (2008) ("In order to find that a child comes within the court's jurisdiction, at least one statutory ground for jurisdiction contained in MCL 712A.2(b) must be proven, either at trial or by plea.").